# FOR PUBLICATION



FILED & ENTERED

JUN 14 2021

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY gonzalez  DEPUTY CLERK

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | | | |
|---|---|---|---|
| In re: | Anthony Joseph Kassas, Debtor. | Case No.:<br>Adv. No.: | 2:19-bk-24457-ER<br>2:21-ap-01021-ER |
| Anthony Joseph Kassas,<br><br>Plaintiff,<br><br>v.<br><br>The State Bar of California,<br><br>Defendant. | | **MEMORANDUM OF DECISION FINDING THAT INDEBTEDNESS OWED TO THE CLIENT SECURITY FUND OF THE STATE BAR OF CALIFORNIA IS NON-DISCHARGEABLE IN BANKRUPTCY**<br><br>**[RELATES TO DOC. NO. 27]** | |
| | | Date: | May 19, 2021 |
| | | Time: | 11:00 a.m. |
| | | Location: | Ctrm. 1568<br>Roybal Federal Building<br>255 East Temple Street<br>Los Angeles, CA 90012 |

At issue is whether debt in excess of $2 million owed by a disbarred attorney to the Client Security Fund of the State Bar of California is dischargeable in bankruptcy.[1] The Court finds that

---

[1] The Court considered the following pleadings in adjudicating this matter:
  1) Complaint for Declaratory Relief [Doc. No. 1];
  2) Defendant the State Bar of California's Notice of Motion and Motion to Dismiss Complaint [Doc. No. 9];
      a) Declaration of Suzanne C. Grandt in Support of Defendant the State Bar of California's Motion to Dismiss Complaint [Doc. No. 10];

the Client Security Fund debt is a fine payable to a governmental unit that is not compensation for actual pecuniary loss. Therefore, the debt is non-dischargeable under § 523(a)(7) of the Bankruptcy Code.[2]

## I. Facts[3]

Anthony Joseph Kassas ("Kassas") was disbarred from the practice of law on January 15, 2014. Among other misconduct, Kassas advertised his legal services to financially distressed homeowners by sending them mailers falsely stating that Kassas had commenced litigation against various banks. After the homeowners advanced fees to Kassas of between $1,500 to $4,500 based upon promises that Kassas could assist them in obtaining loan modifications, Kassas failed to competently perform the promised legal services.

As part of his discipline, the California Supreme Court ordered Kassas to make restitution to 56 former clients, in the total amount of $201,706 plus interest. Kassas was also ordered to pay the State Bar $61,112.27 as reimbursement for the costs of his disciplinary proceeding.

Kassas failed to make restitution to any of his former clients. Of the 56 clients Kassas had been ordered to reimburse, 51 were subsequently reimbursed from the State Bar's Client Security Fund. The Client Security Fund also reimbursed an additional 305 applicants who were also

---

       b) Request for Judicial Notice in Support of Defendant the State Bar of California's Motion to Dismiss Complaint [Doc. No. 11];

3) Plaintiff's Opposition to Motion to Dismiss [Doc. No. 18];

4) Defendant the State Bar of California's Reply to Opposition to Motion to Dismiss Complaint [Doc. No. 21];

5) Defendant the State Bar of California's Supplemental Brief in Support of Motion for Summary Judgment [Doc. No. 27];

       a) Defendant the State Bar of California's Request for Judicial Notice in Support of Motion for Summary Judgment [Doc. No. 28];

       b) Declaration of Suzanne C. Grandt in Support of Defendant the State Bar of California's Motion for Summary Judgment [Doc. No. 29];

       c) Declaration of Kimberly Cochran in Support of Defendant the State Bar of California's Motion for Summary Judgment [Doc. No. 30];

       d) Declaration of Betty Yung in Support of Defendant the State Bar of California's Motion for Summary Judgment [Doc. No. 31]; and

6) Plaintiff's Supplemental Brief in Opposition to Motion for Summary Judgment [Doc. No. 32].

[2] Unless otherwise indicated, all "Civil Rule" references are to the Federal Rules of Civil Procedure, Rules 1–86; all "Bankruptcy Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001–9037; all "Evidence Rule" references are to the Federal Rules of Evidence, Rules 101–1103; all "LBR" references are to the Local Bankruptcy Rules of the United States Bankruptcy Court for the Central District of California, Rules 1001-1–9075-1; and all statutory references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532.

[3] This matter initially came before the Court by way of a Motion to Dismiss filed by the State Bar. The Court determined that it was appropriate to treat the Motion to Dismiss as a Motion for Summary Judgment under Civil Rule 56. Pursuant to Civil Rule 12(d), the Court provided the parties an opportunity to present additional material pertinent to the Motion for Summary Judgment. The parties do not dispute any of the facts set forth below.

victims of Kassas's misconduct as an attorney. As further discussed below, when the Client Security Fund makes payments to clients who were victims of an attorney's dishonest conduct, California law requires the attorney to reimburse the Client Security Fund for such payments, plus interest and processing costs. Aggregate payments made by the Client Security Fund to Kassas's victims amount to $1,367,978.12. Once interest of $669,751.20 and processing costs of $52,367.00 are added, Kassas owes the Client Security Fund $2,090,096.32.[4]

Kassas filed a voluntary Chapter 7 petition on December 11, 2019, and received a discharge on March 16, 2020. Kassas subsequently filed this action, which seeks a determination that the $2,090,096.32 in Client Security Fund debt, the $61,112.27 in disciplinary costs, and the $201,706 in restitution obligations ordered by the California Supreme Court were discharged in his bankruptcy.

The State Bar concedes, and the Court agrees, that the $201,706 in restitution payments has been discharged.[5] Kassas acknowledges that under *State Bar of Cal. v. Findley (In re Findley)*, 593 F.3d 1048, 1054 (9th Cir. 2010), the Court is required to find that the $61,112.27 in disciplinary costs has **not** been discharged.[6] Therefore, the dispute before this Court is limited to the dischargeability of the $2,090,096.32 in Client Security Fund debt.

The outcome hinges on the proper characterization of this Client Security Fund debt. According to the State Bar, the debt is a fine, penalty, or forfeiture payable to a governmental unit (the State Bar) that is not compensation for actual pecuniary loss. The State Bar's theory is that the debt's primary purpose is to punish Kassas by forcing him to confront, in concrete terms, the magnitude of the harm caused by his actions. Kassas disputes this characterization. He argues that because his reimbursement obligation is calculated by the amount paid to his victims, the State Bar is acting as a conduit to reimburse third parties for actual pecuniary loss.

## II. Discussion
### A. Kassas's Client Security Fund Indebtedness is Non-Dischargeable

"A Chapter 7 bankruptcy discharge releases the debtor from personal liability for her pre-bankruptcy debts." *Boeing North America v. Ybarra (In re Ybarra)*, 424 F.3d 1018, 1022 (9th Cir. 2005). Section 523 of the Bankruptcy Code enumerates nineteen categories of debts that are

---

[4] This figure includes interest accrued as of April 30, 2021. The rate of interest is set yearly by the Board of Trustees of the State Bar and is currently set at 10%. Kassas's indebtedness is also subject to increase if the Client Security Fund makes additional payments to other victims of Kassas's misconduct in accordance with the process discussed in Section II, below. Under Cal. Bus. & Prof. Code § 6140.5(c), Kassas would be obligated to reimburse the Client Security Fund for any such additional payments.

[5] To be non-dischargeable under § 523(a)(7), a debt must be "payable to and for the benefit of a governmental unit." § 523(a)(7). The direct restitution payments that the California Supreme Court ordered Kassas to make do not satisfy this requirement and are therefore dischargeable. *See In re Albert-Sheridan*, 960 F.3d 1188, 1193 (9th Cir. 2020).

[6] Kassas continues to maintain his claim as to the non-dischargeability of the disciplinary costs because he intends to seek reversal of *Findley* on appeal. As Kassas correctly observes, this Court has no ability to deviate from *Findley*'s holding that the cost of a State Bar disciplinary proceeding is non-dischargeable under § 523(a)(7). *See Findley*, 593 F.3d at 1054 ("[We conclude that … attorney disciplinary costs imposed by the California State Bar … are excepted from discharge in bankruptcy pursuant to 11 U.S.C. § 523(a)(7).").

not covered by the discharge. One of the exceptions provides that debt is non-dischargeable "to the extent such debt is for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss." § 523(a)(7).

The Ninth Circuit has not determined whether debt owed to the Client Security Fund is non-dischargeable under § 523(a)(7). *See Albert-Sheridan v. State Bar of California (In re Albert-Sheridan)*, 960 F.3d 1188, 1194 n. 5 (9th Cir. 2020) (stating that the issue of the dischargeability of reimbursements to the Client Security Fund was not before the court).

The Client Security Fund was established "to relieve or mitigate pecuniary losses caused by the dishonest conduct of licensees of the State Bar …." Cal. Bus. & Prof. Code § 6140.5(a). Any attorney "whose actions have caused the payment of funds to an applicant from the Client Security Fund shall owe those funds to the State Bar and reimburse the Client Security Fund for all moneys paid out as a result of the [attorney's] conduct with interest, in addition to the payment of the assessment for the procedural costs of processing the claim." *Id.* at § 6140.5(c). The State Bar is permitted to "collect any money paid out by the Client Security Fund … through any means provided by law." *Id.*

Funds are distributed from the Client Security Fund pursuant to rules promulgated by a Client Security Fund Commission (the "Commission") created by the Board of Trustees of the State Bar (such rules, the "CSF Rules"). "To qualify for reimbursement, an applicant must establish a loss of money or property that was received by an active attorney who was acting as an attorney or in a fiduciary capacity customary to the practice of law …." CSF Rule 3.430(A). The loss must have been caused by "dishonest conduct," defined as (1) the "theft or embezzlement of money," (2) the "[f]ailure to refund unearned fees received in advance for services when the attorney performed an insignificant portion of the services or none at all," (3) the borrowing of money "from a client without the intention or reasonable ability … of repaying it," (4) the obtaining of money or property "from a client for an investment that was not in fact made," or (5) "[a]n act of intentional dishonesty or deceit that proximately leads to the loss of money or property." CSF Rules 3.430–3.431.

The Commission has discretion "to deny or limit reimbursement" to applicants, and "[n]o person or entity has a right to reimbursement" from the Client Security Fund. CSF Rule 3.430(D); *see also People v. Hume*, 196 Cal. App. 4th 990, 999, 126 Cal. Rptr. 3d 824, 830 (2011) ("By statute and rule, all [Client Security Fund] payments made by the State Bar are entirely discretionary."). For example, reimbursement may be limited where an "applicant failed to act reasonably to protect against the loss, considering the circumstances of the transaction, the past dealings with the attorney, and differences in their education and business sophistication." CSF Rule 3.435.

Once an application for reimbursement is received, counsel for the Client Security Fund conducts an investigation and submits a Tentative Decision to the Commission. The Tentative Decision is served on the attorney and the applicant, each of whom have thirty days to file objections thereto. CSF Rule 3.443(B). Any objections are considered by the Commission, which has the ability to conduct hearings and receive evidence. CSF Rule 3.441(C). After considering objections, the Commission issues a Final Decision. Either the applicant or the attorney may seek review of the Commission's Final Decision in the California Superior Court, pursuant to Cal. Civ. Proc. Code § 1094.5 and CSF Rule 3.450. The maximum allowable payment per applicant is $100,000. CSF Rule 3.434(A).

Here, the State Bar made reimbursement payments in the aggregate amount of $1,367,978.12 to 356 of Kassas's victims. The highest payment made to a single victim was $14,125; the lowest

payment made was $958.33. The typical victim received a payment of between $3,000 to $6,000.

In *Kelly v. Robinson*, the Supreme Court held that restitution imposed in connection with a criminal conviction is non-dischargeable under § 523(a)(7). 479 U.S. 36 (1986). In reaching this conclusion, the court emphasized that the overriding purpose of criminal restitution is to benefit society by rehabilitating offenders:

> The criminal justice system is not operated primarily for the benefit of victims, but for the benefit of society as a whole. Thus, it is concerned not only with punishing the offender, but also with rehabilitating him. Although restitution does resemble a judgment "for the benefit of" the victim, the context in which it is imposed undermines that conclusion. The victim has no control over the amount of restitution awarded or over the decision to award restitution. Moreover, the decision to impose restitution generally does not turn on the victim's injury, but on the penal goals of the State and the situation of the defendant….
>
> Because criminal proceedings focus on the State's interests in rehabilitation and punishment, rather than the victim's desire for compensation, we conclude that restitution orders imposed in such proceedings operate "for the benefit of" the State. Similarly, they are not assessed "for ... compensation" of the victim. The sentence following a criminal conviction necessarily considers the penal and rehabilitative interests of the State. Those interests are sufficient to place restitution orders within the meaning of § 523(a)(7).

*Kelly v. Robinson*, 479 U.S. 36, 52–53, 107 S. Ct. 353, 362–63, 93 L. Ed. 2d 216 (1986).

In *Brookman v. State Bar*, the California Supreme Court held that like criminal restitution, the primary purpose of restitution payable to the Client Security Fund is rehabilitative, not compensatory:

> Although *Robinson* involved discharge of a restitution order arising in a criminal case, and the present matter involves restitution ordered *after* discharge in a bar disciplinary case, we believe *Robinson*'s reasoning applies here. Restitution imposed as a condition of probation serves the state interest of rehabilitating culpable attorneys (and protecting the public) by forcing the attorney to "confront, in concrete terms, the harm his actions have caused." Such restitution—especially when, as here, it is made payable to the State Bar Client Security Fund—is clearly for the benefit of the public at large, not the underlying victim in this case (whom, we note, has already been compensated by the State Bar Client Security Fund). Because such restitution fundamentally serves the goal of rehabilitation, it is not merely compensation to the government for "actual pecuniary loss."

*Brookman v. State Bar*, 46 Cal. 3d 1004, 1009, 760 P.2d 1023, 1026 (1988) (internal citation omitted).

Adopting the premise that the primary purpose of requiring attorneys to reimburse their State Bar's client security fund is rehabilitative and not compensatory, bankruptcy courts have determined that client security fund debt is non-dischargeable. In *Virginia v. Young (In re Young)*, the court's determination of non-dischargeability turned on a finding that the purpose of requiring an attorney to reimburse the client security fund was to punish the attorney and to protect the public. 577 B.R. 227, 231 (Bankr. W.D. Va. 2017). The *Young* court emphasized that

"[i]n order to determine whether the debt is compensation for actual pecuniary loss, courts have looked to the primary purpose of the debt." *Id.; see also Disciplinary Board of the Supreme Court of Pennsylvania v. Feingold (In re Feingold)*, 730 F.3d 1268, 1275 (11th Cir. 2013) ("As to the 'not compensation for actual pecuniary loss' element, we 'look to the context in which the penalty [was] imposed to determine whether its purpose is truly compensatory.'"). The District Court for the Central District of California relied upon this reasoning to likewise conclude that Client Security Fund debt was excepted from discharge:

> [T]he State Bar's requirement that an attorney with ethical violations reimburse his former clients for their losses [by making payments to the Client Security Fund] is grounded in the state's interest in rehabilitation, punishment, and deterrence…. [The attorney's] debt to the State Bar's [Client Security Fund] is a penalty that serves the state's interest in the rehabilitation and punishment of attorneys who have committed ethical violations.

*In re Phillips*, No. CV 09-2138 AHM, 2010 WL 4916633, at *4 (C.D. Cal. Dec. 1, 2010).

The Court finds the reasoning of these cases to be persuasive. The debt owed by Kassas to the Client Security Fund is a penalty imposed in furtherance of the State's interest in punishing and rehabilitating errant attorneys, rather than compensation for actual pecuniary loss.

Kassas contends that his Client Security Fund debt is dischargeable under the reasoning of *Scheer v. State Bar of California (In re Scheer)*, 819 F.3d 1206 (9th Cir. 2016). Kassas overlooks several key distinctions between *Scheer* and the instant case. In *Scheer*, the disciplined attorney was ordered to pay $5,500 *directly* to a former client. Here, by contrast, Kassas's debt is payable to the Client Security Fund, not to his former clients. Any payments made by Kassas to the Client Security Fund will go not to his former clients—who have already been reimbursed—but to other victims of dishonest attorneys. This reality highlights a second key distinction between *Scheer* and the instant case—the fact that the victim in *Scheer* had not been compensated for the damages caused by the attorney's misconduct. That fact made it possible for the *Scheer* court to categorize the payment in question as "compensation for actual pecuniary loss" falling with the § 523(a)(7) discharge exception. Unlike the situation in *Scheer*, payments made by Kassas to the Client Security Fund will not be directed not to Kassas's clients but rather will enable the Fund to reimburse other victims of attorney misconduct. The payments, therefore, are "clearly for the benefit of the public at large," *Brookman*, 46 Cal. 3d at 1009, not for the benefit of Kassas's victims.

Kassas asserts that the Client Security Fund reimbursement obligation cannot be characterized as a "fine, penalty, or forfeiture" because the State Bar is required to seek reimbursement of the entirety of Client Security Fund payments made to Kassas's victims, and lacks discretion to tailor Kassas's reimbursement obligation to the gravity of his offenses. Kassas's argument overlooks the fact that the structure of the CSF Rules guarantees that the amounts paid to Kassas's victims will be proportional to Kassas's wrongdoing. Victims can obtain reimbursement only for money that they transferred to an attorney that was subsequently lost through the attorney's dishonest conduct. This means that Kassas's obligation to the Client Security Fund is directly proportional to the amount of money he wrongfully obtained from clients through dishonest conduct. Therefore, Kassas's obligation to reimburse the Client Security Fund is precisely tailored to the gravity of Kassas's offenses. The reimbursement obligation consequently bears the hallmarks of a "fine, penalty, or forfeiture" because it forces

Kassas to "confront, in concrete terms, the harms his actions have caused." *Robinson*, 479 U.S. at 49 n. 10.

### B. The Court Certifies a Direct Appeal of this Decision to the Ninth Circuit Court of Appeals[7]

Title 28 U.S.C. § 158(d)(2)(A)(i) provides that the Bankruptcy Court, acting on its motion, may certify a direct appeal of a judgment to the Court of Appeals if the judgment "involves a matter of public importance" or if the judgment "involves a question of law as to which there is no controlling decision of the court of appeals for the circuit." Both circumstances apply here. As discussed above, the Ninth Circuit has not determined whether obligations owed to the Client Security Fund are dischargeable in bankruptcy. The issue also involves a matter of public importance. Whether Client Security Fund obligations are dischargeable will affect the size of the Client Security Fund and its ability to compensate victims of attorney misconduct. The issue has arisen in at least two other cases in this district[8] and is likely to continue to arise.

## III. Conclusion

Based upon the foregoing, the Court finds that the State Bar is entitled to entry of a judgment finding that Kassas's obligations (a) to reimburse the Client Security Fund in the amount of approximately  $2,090,096.32 and (b) to pay the State Bar $61,112.27 in disciplinary costs are both non-dischargeable. The Court will prepare and enter an appropriate judgment.

---

[7] Concurrently with the issuance of this Memorandum of Decision, the Court will issue the memorandum contemplated by Bankruptcy Rule 8006(e)(1) containing all the information required by Bankruptcy Rule 8006(f)(2).

[8] *See State Bar of California v. Roark* [Adv. No. 6:21-ap-01046-WJ] and *Lenore LuAnn Albert-Sheridan v. State Bar of California et al.* [Adv. No. 8:18-ap-01065-SC].

###

Date: June 14, 2021

Ernest M. Robles
United States Bankruptcy Judge